HARDY, Judge.
This is an expropriation suit instituted by the Department of Highways, under which it took for highway purposes certain property located in the City of Shreveport, tendering as the value thereof a deposit in the registry of the court in the sum of $13,200.00. By answer the owners of the property as defendants in the action, Jessie W. Rutledge, John Edward Rutledge and William H. Rutledge, placed at issue the value of the property expropriated and prayed for judgment in the principal sum of $35,000.00. By supplemental petition plaintiff increased its value of the property to the sum of $17,000.00 and deposited the additional sum of $3,800.00. After trial there was judgment in favor of defendant owners in the principal sum of $23,500.00, subject to credit of the sum of $17,000.00 previously paid, from which judgment only two of the defendants, William H. and John E. Rutledge have appealed. Plaintiff has answered the appeal, praying a reduction of the judgment to the sum of $17,-■000.00, representing the value placed thereupon by its expert appraisers.
Two material stipulations have been entered into between counsel for the parties litigant and are contained in the record before us. One of these stipulations fixes the ■ownership interest of the parties defendant .as follows:
William H. Rutledge .3097193
John E. Rutledge .3097193
Jessie W. Rutledge .3805614
Only the interests of the first two named •parties are involved in this appeal.
The second stipulation is that the tract ■of land expropriated had a value of $30,->000.00 except insofar as the effect of the ■terrain thereof might diminish or increase •the said valuation. By this stipulation the issue before us has been limited to a determination of the effect of the terrain upon .the value of the property.
The tract in question consists of a front.-age of 120 feet on Louisiana Avenue in the City of Shreveport by a depth of 166.5 feet, sloping upward from ground level on the Louisiana Avenue frontage to a height of 30 feet at the rear of the property.
It is pertinent to observe that, obviously, the judgment of the district court represents an average between the valuation of plaintiff’s expert witnesses in the amount of $17,000.00 and the valuation of defendants’ expert witnesses in the sum of $30,-000.00.
The contentions of the parties may be briefly stated. On behalf of plaintiff it is urgently insisted that the terrain of the lot as above described requires an overall reduction to street level which could be effected only at the cost of removal of a large quantity of dirt and the construction of concrete retaining walls at a substantial expense to the owners of the property.
The claims of the appellant owners are (a) that the terrain as it exists is adapted to a special type of architectural construction which would substantially enhance the value of the property without the necessity of reducing the same to a street level flat surface; and, alternatively, (b) that the cost of leveling the terrain would be more than compensated by the sale of the dirt necessarily removed in such process.
In support of its contention as to the necessity for, and cost of, leveling the tract involved, plaintiff tendered as an expert witness Mr. E. M. Freeman, whose qualifications as a structural designer and engineer are so exceptional as to entitle his testimony to unusual consideration. On direct examination Mr. Freeman testified that the leveling of the property would require the removal of 11,350 cubic yards of dirt at a cost of fifty cents per yard, or a total of $5,675.00, and the construction of 368 cubic yards of concrete retaining walls, including necessary reinforcement, etc., at a cost of $80.00 per yard, or a total of $29,-440.00, the total cost of such an operation therefore approximating $35,115.00.
*438 However, it is important to note that this witness further testified on direct examination as follows:
“Q. As of August 31, 1959, what was the method in Shreveport of having such dirt removed ?
“A. Well, at that time there were two methods. Very often an owner of a certain premise gained a windfall by seeking' — -I mean, by selling royalty rights for the removal of dirt from his premises, and another one would be for an owner to forthrightly employ an earth excavator and remove it and take the earth away. Those are the two that I knew about at the moment. I guess there are others.
“Q. Are you familiar with the type of soil that was located on this lot?
“A. Yes, sir.
“Q. Do you know of your own knowledge if there zvas any market for such soil at the time by which an owner could gain a royalty on having it removed?
“A. At that particular time — I could not exactly pinpoint the date, Mr. Sholars, because I had been used to directing contractors on or about that time — but I don’t know whether it was exactly August—
“Q. That is all right. In the general neighborhood would be satisfactory.
“A. In the general neighborhood we paid a time — I was involved in a construction project wherein the constructor was paid a royalty — or paid a royalty to import a quantity of earth fill.
“Q. Did he pay for the soil or was he paid to remove it?
“A. He was paid in construction costs estimate by in-place — he had to go and seek and place the material in the finished embankment before he could procure payment.
“Q. Did he have to pay for that fill that he got or was he paid by the owner of the fill to remove it?
“A. That I cannot say, sir. I did not know by what method he secured the soil.
“Q. Now, very close to the subject lot, on the Common Street overpass, was there a lot of fill used ?
“A. Yes, sir.
“Q. We you personally involved in that construction?
“A. We were the consulting engineers.
“Q. In point of time when was that in relation to August 31, 1959 ?
“A. I believe within a couple of years, within a year and a half.
“Q. Was the fill used on that purchased by the contractor or was he paid to dig it up and haul it off ?
“A. To my knowledge I could not truthfully say.
“Q. Was part of the fill for that project rejected?
“A. Yes, sir.
“Q. In other words, fill has to be of certain specifications—
“A. Yes, sir, of certain quality.
“Q. Before it can be used?
“A. Yes, sir.
“Q. Do you know if the fill from the subject property was the type usually used for fill in Shreveport or not?
“A. Yes, sir, it is a desirable type.” (Emphasis supplied.)
Under cross examination the witness elaborated upon the above testimony, stating that the type of soil on the property involved was desirable for filling or construction of embankments, was in demand *439 by road contractors and street builders, and that at the time it was a common practice for a contractor to purchase such dirt from the landowner. The witness further conceded that the construction of the concrete retaining wall was not an absolute necessity but was dependent upon the type of use to which the property might be devoted, and, as a fact, an immediately adjacent property accommodating a commercial building had been brought down to grade without the necessity for the use of a retaining wall.
We think a fair analysis of the testimony of this witness inescapably leads to the conclusion that his estimate of cost of reducing the property to grade by paying for the removal of dirt and the construction of retaining walls should be disregarded.
Defendants further supported their contentions as to the value of the fill dirt and the demand therefor by the testimony of Mr. D. L. Monroe, an experienced and qualified general construction contractor primarily engaged in heavy construction relating to roads, streets, levees, dams, etc.
The only conclusion which we can reach in view of the expert testimony in this case is that the very operation of leveling the terrain of the expropriated tract of land would have resulted in a profit rather than an expense to the owners thereof.
In support of the other contention advanced on behalf of defendants, the expert testimony of Mr. J. M. Huddleston, a qualified licensed and practicing architect, was tendered. The gist of Mr. Huddleston’s testimony was that in the early part of 1957, before the property in question was designated as necessary for plaintiff’s highway construction plan, at the request of the owners of the property he made a detailed study and prepared a use and feasibility report. This report recommended the erection of a split level commercial building three stories in height on Louisiana Avenue by 20 feet in depth, and one story across the rear high grade level of the property. One of the practical features of this type construction would have been to take advantage of extensive free parking facilities to the rear of such a building, on the same level therewith, immediately across an alley where the city had constructed and was maintaining a concrete parking area.
The remaining testimony on trial of the case consisted of expressions of expert opinions and conclusions by Messrs. L. L. May and O. L. Jordan on behalf of plaintiff and M. E. Hurlbut and J. Pollard Sealy on behalf of defendant, all of whom are qualified realtors whose testimony in numerous other cases before this Court has been given careful consideration. As had been the experience in past cases, the testimony of these parties represented the minimum and maximum valuation in accordance with their opinions, all of which were supported by valid and logical considerations.
We think the instant case, in view of the controlling issue as to the effect of the terrain of the property, clearly requires the assessment of a valuation at least equivalent to that of the adjacent property and equal to the stipulated value of $30,000.00 as to the tract involved, excluding the effect of the terrain. This conclusion, in our opinion, is more than preponderantly justified by the testimony of plaintiff’s expert, Mr. Freeman, and defendants’ experts, Messrs. Monroe and Huddleston, to which we have above given some detailed consideration.
The effect of such a conclusion results in an increase in the valuation of the property expropriated from $23,500.00 to $30,000.00, or an excess of $6,500.00, which must be apportioned in accordance with the percentage ownerships of the two appellants.
Accordingly, the judgment appealed from is amended by increasing the amount fixed as just compensation for the property expropriated by the sum of $4,026.36, together with interest at the rate of 5% per an-num thereon from date of judicial demand until paid, and further providing that the said increase be apportioned equally in favor of the defendants-appellants, William H. and John E. Rutledge, and as amended the judgment appealed from is affirmed.